No. 80-102

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

RAY D. SHARP and FREDA SHARP,

Plaintiffs and Appellants,

vs.

EARNEST D. HOLTHUSEN, DONNA M.
HOLTHUSEN and the FIRST NATIONAL
BANK OF MISSOULA, et al.,

Defendants and Respondents.

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula,
Honorable James B. Wheelis, Judge presiding.

Counsel of Record:

For Appellants:

Balyeat, Kammerer and Rodli, Missoula, Montana

For Respondents:

Tipp, Hoven and Skjelset, Missoula, Montana

Submitted on briefs: August 6, 1980

Decided: September 12, 1980

Filed: SEP 12 1980

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court, Fourth Judicial District, Missoula County, dismissing plaintiff's claim for forfeiture under a contract for deed.

We shall address two issues on this appeal:

1. May a court of equity relieve a defaulting buyer, in a contract for deed from a forfeiture of his equity, when before suit the buyer tendered full payment under the contract, plus payment of the seller's personal expenses and attorney fees to that date, and where buyer has failed to cure a default of nonpayment under the contract within the time required in the contract and after proper notice was sent declaring that the contract was in default.

2. Whether sellers, who sued to force a forfeiture of the buyers' equity, are entitled to attorney fees as the prevailing party when judgment is rendered not allowing the forfeiture, but requiring sellers to accept buyers tender of performance made before suit.

On October 11, 1976, Ray D. and Freda Sharp, plaintiffs and sellers, and Earnest D. and Donna M. Holthusen, defendants and buyers, entered into a written contract for deed for the sale and purchase of real property located in Lake County. Terms included monthly installment payments to plaintiffs, assumption by defendants of plaintiffs' Veterans Administration loan, and discharge in full of the balance due and the VA loan by October 11, 1977.

Plaintiff gained possession of the property on October 11, 1976. Plaintiffs have paid $7,000 cash down and monthly payments totaling $1,081. Plaintiffs also made payments on the assumed Veterans Administration loan. The contract for

-2-

deed required defendants to make a balloon payment to plaintiffs and refinance the Veterans Administration loan. The parties contemplated that the defendants would refinance the obligations by October 11, 1977, and that plaintiffs would cooperate in this refinancing, if required.

A well supplying the property with water was found to be functioning properly at the time of sale. Both parties believed that the well was functioning properly; however, this was incorrect. It was later discovered that the water well was contaminated. The trial court found neither party in fault for the contamination.

In April 1977 defendants actively sought financing for the obligation due under the contract. The defendants attempted to refinance the balloon payment due on October 11, 1977, rather than make a cash payment from their own resources. Because of numerous reasons, defendants were not able to obtain the necessary financing within the time limit.

On October 21, 1977, a notice of default was sent to defendants as required in the contract. The default was not cured within forty-five days as specified in the contract, and a demand for the return of the escrow documents from the First National Bank was made. Subsequently, the parties entered into settlement negotiations for purposes of compromising such claims as each might have against the other.

Finally in January 1978, financing for the payoff of the entire contract, the balloon payment, as well as the remaining principal and interest due the plaintiffs was obtained through Lomas and Nettleton of Missoula, Montana. Lomas and Nettleton made the closing date of the loan January 16, 1978, but because they required a test of the water purity on the property, the loan could not be closed

-3-

as a result of the water test showing that the water well was contaminated.

The Montana State Department of Health and Environmental Sciences recommended to defendants to clean, recap and filter the well water. Later, the Department recommended that the well be relocated. Defendants drilled a new well and installed a new pump at a cost of $1,741.

In March 1978 when the well was completed, defendants were given financing from Lomas and Nettleton. Defendants tendered payment to the escrow agent. The escrow agent refused to accept the loan on directions from plaintiffs. Plaintiffs required defendants to pay all attorney fees and release plaintiffs from all claims they may have for misrepresentation of the water supply. Defendants tendered full payment for the attorney fees, but refused to release the plaintiffs from any action of misrepresentation.

Negotiations continued. However, the parties were not able to enter into a settlement agreement. Plaintiffs filed suit against defendants for forfeiture of the contract and for repossession of the real property in May, 1978. Defendants have been ready, willing and able to pay off the entire amount of the contract since April, 1978. Plaintiffs have refused tender of payment.

> "Whenever by the terms of an obligation a party thereto incurs a forfeiture or a loss in the nature of a forfeiture by reason of his failure to comply with its provisions, he may be relieved therefrom upon making full compensation to the other party, except in case of a grossly negligent, willful or fraudulent breach of duty." Section 28-1-104, MCA.

This Court has allowed a party to a contract who is in default, and who is subject to a penalty of forfeiture to redeem his right to the property. Yellowstone County v. Wight (1944), 115 Mont. 411, 145 P.2d 516; Parrott v. Heller

-4-

(1976), 170 Mont. 212, 557 P.2d 819. Parties are relieved from forfeiture "in any case where he sets forth facts which appeal to the conscience of a court of equity." Parrott v. Heller, 557 P.2d 819, 820. This Court has said that section 28-1-104, MCA, was enacted;

> ". . . for the benefit of obligors whose failure to
> punctually perform would result in loss to them
> in the matters respect to which they have con-
> tracted. The intention of the Legislature in
> enacting the statute was that it should be opera-
> tive and that it should be given full force and
> effect when the circumstances in any case gave
> it application. The intention of the law under
> this statute is that a forfeiture should not be
> needlessly enforced. The courts have established
> that as the policy of the law in the absence of
> statute. The rule as it has found expression in
> both court decisions generally is that both
> in law and in equity forfeitures are abhorred
> . . ." Yellowstone County v. Wight, 115 Mont. 411,
> 417, 145 P.2d 516, 518.

The parties' contract, which requires forfeiture in the case of default, does not divest a court of equity of its power to relieve a party from the consequences of his default and need not grant forfeiture.

Defendants' actions here were not intentional, willful or fraudulent acts. The record disclosed that defendants made a good faith effort to pay the necessary money at the time it was due, but because of temporary circumstances outside of their control, the condition of the water well, they were unable to secure the necessary financing within the time desired.

Plaintiffs argue that the time period between default and actual tender of payment was not reasonable to allow a court of equity to relieve the defendants from forfeiture under section 28-1-104, MCA. We disagree.

Subsequent to the forty-five day period given the buyers to cure this default, the parties entered into set-tlement negotiations for the purpose of compromising such

claims as each might have against the other. Defendants attended a closing at Lomas and Nettleton in January of 1978. This closing could not be completed because of the condition of the water well. Plaintiffs never objected to defendants' improvements on the land, the drilling and installing of a new water well. When tender was made, plaintiffs were willing to accept tender on the condition defendants released the plaintiffs from possible suit for misrepresentation on the condition of the water well.

The trial court's judgment gives the plaintiffs what they are equitably entitled to, the amount due under the contract, compensation for their personal expenses and attorney fees, as a result of the delay from the time of performance to the time of tender of payment in March, 1978. There comes a time when failure to perform is not reasonable, and the application of the antiforfeiture statute not applicable, but this is not the case. From the facts presented here, we find the court was correct in its equitable judgment.

It appears from the record that defendants presented to the District Court sufficient evidence to appeal to the "conscience of a court of equity" which resulted in a specific finding that application of the default clause (forfeiture) would be "harsh and inequitable." Defendants made an initial downpayment and monthly payments to plaintiffs. They paid on the Veterans Administration loan. They spent over $1,700 in improvements on the property in order to drill a well to provide clean water to the house and to satisfy requirements of loan application without liability to the plaintiffs. In addition to the above-mentioned losses, the defendants would lose nearly $10,000 in equity in the land if forfeiture occurred.

The facts in this case present a clear case for application of section 28-1-104, MCA. Defendants made tender of all of the amount due, as well as the personal fees, expenses and attorney fees of the plaintiff to date. Plaintiffs suffered no loss. The right to relief under the statute commences when the contracting party is in default and subject to forfeiture. Kovachich v. Metals Bank and Trust Co. (1961), 139 Mont. 449, 365 P.2d 639.

We accept plaintiffs argument that defendants were in default of the contract for deed and of their obligations under the contract, but they still retained a right under the antiforfeiture statute to make a tender, to redeem their interest in the property, and to appeal to the equity of the trial court. Defendants were not relieved from their actions of default, only plaintiffs' claim for forfeiture.

Plaintiffs accepted payment of the contract amount but required that defendants also provide a release of all claims arising out of the contract. From the record, the court found that the plaintiffs did not object to the tender, only to the release that was demanded as a condition for the acceptance of tender.

We find that tender of payment was made. Defendants were delinquent in their payment, and they were in default, but under the circumstances as are presented in this case, the antiforfeiture statute allows the defendants to make full payment of interest and attorney fees for the default, and allows the contract to be enforced.

Plaintiffs argue they are entitled to attorney fees when the buyers were in default on an agreement which entitles the "prevailing party to costs of suit and reasonable attorney fees in the event suit is filed."

The trial court found that defendants did in fact default on the contract between the parties, but as equitable relief to enable them to avoid forfeiture of their equity, they should be allowed to proceed as if the default were insignificant. The trial court granted defendants relief from the forfeiture. It did not grant them relief from the default. On the issue of default, plaintiffs prevailed in the District Court and are entitled to reasonable attorney fees up until time of tender of payment on March, 1978. The equitable relief granted the defendants is the subject of this appeal. The defendants defaulted on the contract between the parties, and equity favors enforcement of the contract provisions. In no way can it be said that the defendants prevailed on this suit, when in fact, it was their default which necessitated this suit in the first place. However, this Court affirms the District Court's equitable judgment as to the forfeiture issue.

The trial court erred in awarding all attorney fees for the suit and appeal to defendants.

We, therefore, reverse the trial court's decision awarding attorney fees and instruct:

1.  Defendants pay plaintiffs reasonable attorney fees until the time of tender of payment on March 1978, pursuant to the contract; and,

2.  Both parties pay their own attorney fees for the costs of this suit and appeal, thereon.

Affirmed in part and reversed in part according to this opinion.

John Conway Harrison
                    Justice

-8-

We concur:

_____
Chief Justice

_____

_____
Justices